Casey, Ch. J.
delivered the opinion of the court:
Some time in December, 1860, the claimant’s intestate, a eiti-izen of Kansas, went to Mobile, in the State of Alabama, with a lot of horses for sale. Finding it difficult to dispose of his property, he was detained until after the breaking out of the rebellion. He then disposed of his property and made several attempts to leave and withdraw from the rebel territory, and to return to Kansas, where he had a family residing.
In these attempts he was frustrated by the rebel authorities and forces, and was compelled to remain against his will during the war. While so detained at Mobile, the claimant turned his horses' into a livery stable, and so used them at livery for some time. The first attempt made by him to leave the confederacy was in July or August, 1861.
Having sold his horses, he in 1864 invested the proceeds in cotton, and stored it in Mobile, where it was found upon the capture of that city by the Union forces. It was seized, shipped to New York, and sold there by the agent of the United States, and the proceeds are in the Treasury of the United States. Within a few days after the capture of Mobile, the claimant’s intestate left Mobile, returned to his home in Kansas, and where he died some time afterward.
The United States by their counsel interpose the defense, that the facts detailed constituted on the part of claimant’s intestate a violation of the non-intercourse laws, and t-hatthex>roperty was liable thereby to capture and forfeiture.
The claimant produces evidence which satisfies us that his in-' testate rem ainéd involuntaril yin the confederacy during th e war; that so soon after breaking out of hostilities as he could dispose of his property, he made bona, fide efforts to get away and was prevented. It does not appear that he wished or atteinjíted to carry on any illicit or interdicted trade with the enemy. Being there against Ms will, we do not see why he might not invest the worthless money of the confederacy, which he was obliged to take in payment of his property, in anything which would have value when the rebellion should be suppressed. He made no attempt to carry it through the blockade or the lines, and we do not therefore think this comes within the prohibitions of trading with the enemy. He also proves that in sentiment and conduct he remained loyal and true to the United States during *416 the rebellion, and that so soon as released by the capture of the city, he left and returned to his home.
Under all the circumstances, we think the claimant entitled to recover, and ñnd in his favor for the proceeds of seventy-one bales of upland cotton, at $183 42 per bale, amounting to the sum of $13,023 82, and for which sum judgment is to be entered in favor of claimant.